IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SURINA DIXON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-10-1045 |
| | § | |
| TEXAS SOUTHERN UNIVERSITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

ORDER

Pending before the Court is Plaintiff's Second Supplemental Motion for Attorneys' Fees and Related Nontaxable Expenses (Document No. 99). Having considered the motion, submissions, and applicable law, the Court determines that Plaintiff's motion for attorneys' fees should be granted in part and denied in part.

I. BACKGROUND

This is a case arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* Plaintiff Surina Dixon ("Dixon") sued Defendant Texas Southern University ("TSU") for gender discrimination and retaliation, each under Title VII and Title IX, resulting in four causes of action. Prior to submitting the case to the jury, Plaintiff agreed to drop the Title IX gender discrimination claim. On August 12,

2011, a jury returned a verdict in favor of Dixon on the three remaining claims—Title VII gender discrimination, Title VII retaliation, and Title IX retaliation—awarding her $730,000.00 in damages.

Following the judgment, numerous documents were filed concerning costs and attorneys' fees:

- August 30, 2011—Dixon filed a Motion for Bill of Costs in the amount of $43,982.51.[1]
- August 30, 2011—Dixon filed an original motion for attorneys' fees, which included her counsels' billing records for the time period of March 15, 2009 through July 21, 2011. This motion also requests costs in the amount of $43, 982.51.[2]
- September 7, 2011—Dixon filed a Supplemental Bill of Costs in the amount of $53,559.93.[3]

---

[1] *Motion for Bill of Costs*, Document No. 90.

[2] *Plaintiff's Motion for Attorneys' Fees and Related Nontaxable Expenses*, Document No. 89.

[3] *Supplemental Bill of Costs*, Document No. 92.

- September 7, 2011—Dixon filed a first supplemental motion for attorneys' fees. This motion also requests costs in the amount of $53,559.93.[4]
- September 20, 2011—TSU filed objections to Dixon's motion for attorneys' fees.[5]
- September 21, 2011—Dixon filed a second supplemental motion for attorneys' fees, which included her counsels' billing records for the time period of July 22, 2011 through August 12, 2011. This motion also requests costs in the amount of $53,559.93.[6]

As an initial matter, the Court notes that the costs Dixon has most recently requested in her supplemental bill of costs and her second supplemental motion for attorneys' fees are the same amount—$53,559.93. Therefore, the Court construes these to be one request. On September 26, 2011, the Clerk of the Court taxed those costs against TSU in the amount of $53,559.93.

Therefore, the Court now considers Dixon's various motions for attorneys' fees and related nontaxable expenses, along with TSU's objections. Dixon seeks to

---

[4] *Plaintiff's Supplemental Motion for Attorneys' Fees and Related Nontaxable Expenses*, Document No. 91.

[5] *Defendant Texas Southern University's Objections to Plaintiff's Motion for Attorneys' Fees and Related Nontaxable Expenses*, Document No. 97.

[6] *Plaintiff's Second Supplemental Motion for Attorneys' Fees and Related Nontaxable Expenses*, Document No. 99.

recover $199,632.50 in attorneys' fees. TSU makes three objections: (1) the request for attorneys' fees is not supported by sufficiently detailed time records for July 22, 2011 through August 15, 2011; (2) time spent on the unsuccessful Title IX gender discrimination claim, which was voluntarily dismissed before submission to the jury, should be segregated and subtracted from the award; and (3) the award should not include expenses incurred in the acquisition and use of Dixon's expert witness Dr. Donna Lopiano ("Dr. Lopiano"), who Dixon contends testified only on the dismissed Title IX gender discrimination claim.[7]

In response to TSU's first objection, Dixon has supplemented the record with billing records for the missing time period of July 22, 2011 through August 15, 2011.[8] As to the second and third objections, Dixon argues that segregation of time spent or costs associated with the Title IX gender discrimination claim would be difficult or impossible because that claim was inextricably intertwined with the other, successful

---

[7] Defendant's objections are entitled *Defendant Texas Southern University's Objections to Plaintiff's Motion for Attorneys' Fees and Related Nontaxable Expenses*. Nonetheless, the third objection is actually an objection to the Bill of Costs, which included fees and expenses of Dr. Lopiano. *Plaintiff's Supplemental Bill of Taxable Costs*, Document No. 92 at 2. Because of this misnomer, costs were taxed without consideration of the objection. This is of little consequence because, as discussed in this Order, the Court finds that the objection should be overruled and the Clerk's taxation of costs is approved. *See infra* pgs. 15–16.

[8] *Plaintiff's Second Supplemental Motion for Attorneys' Fees and Related Nontaxable Costs*, Document No. 99, Exhibit 1.

claims in the case. Moreover, Dixon claims that Dr. Lopiano testified to both the Title IX and Title VII gender discrimination claims. The Court will consider the requests and objections in turn.

## II. LAW & ANALYSIS

### A. *Attorneys' Fees*

Congress has authorized the award of reasonable attorneys' fees and experts' fees to the prevailing party in Title VII and Title IX disputes.[9] 42 U.S.C. § 2000e-5(k);42 U.S.C. § 1988(b), (c). Under either statute, "prevailing plaintiffs . . . should receive attorneys' fees in all but exceptional circumstances." *Crawford v. W. Elec. Co., Inc.*, 614 F.2d 1300, 1321 (5th Cir. 1980); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 758 n.5 (1980) (explaining that the standard is the same under either statute); *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 158 n.6 (3d Cir. 2001) (stating the same). Dixon, the plaintiff in this case, prevailed: The jury returned a verdict in favor of Dixon in the amount of $730,000.00, and the Court entered a judgment in that amount. Further, neither party is alleging any exceptional circumstances exist that would preclude an award of attorneys' fees. Therefore, an

---

[9] Title VII expressly authorizes attorneys' fees for the prevailing party. 42 U.S.C. § 2000e-5(k). The Civil Rights Attorney's Fees Awards Act of 1976 authorizes the award of attorneys' fees and costs to the prevailing party in Title IX actions. 42 U.S.C. § 1988(b).

award of attorneys' fees is proper. The Court must now determine the reasonable amount of attorneys' fees to be awarded.

*1. The Standard*

Attorneys' fees requests in the Fifth Circuit are governed by the "lodestar" analysis. *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996); *Turner v. Oxford Mgmt. Serv., Inc.*, 552 F. Supp. 2d 648, 650 (S.D. Tex. 2008) (Atlas, J.). The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by the movant's attorneys' reasonable hourly billable rate. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331 (5th Cir. 1995).

In determining whether the amount of time expended on a matter is reasonable, courts are to review time records supplied by the movant and exclude from the lodestar calculation all time that is "excessive, duplicative, or inadequately documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *Hensley*, 461 U.S. at 432). In setting a reasonable billing rate, courts are directed to consider the attorneys' regular rates as well as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). The plaintiff bears the burden of

demonstrating that the hours expended and rates charged by counsel are reasonable. *See Hensley*, 461 U.S. at 427. Evidence of reasonableness of a proposed hourly rate must include an affidavit or declaration of the attorney performing the work and information about rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896. Appropriate rates can be determined through direct or opinion evidence about what local attorneys charge under similar circumstances. *Blum*, 465 U.S. at 896 n.11; *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).

Once the lodestar figure is determined, the court may adjust the figure upward or downward as necessary to make the award of attorneys' fees reasonable, while ensuring the fee award does not provide a windfall to the plaintiff. *See Hensley*, 461 U.S. at 429. Although courts have "broad discretion in setting the appropriate award of attorneys' fees," there is a strong presumption that the lodestar amount is reasonable and should be modified only in exceptional cases. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006). In deciding whether to make an adjustment to the lodestar figure, courts are instructed to consider the factors articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[10] Courts are to give

[10] These factors include: (1) The time and labor required to represent the clients; (2) The The novelty and difficulty of the issues in the case; (3) The skill required to properly perform the legal services; (4) Preclusion of other employment by the attorney due to

"special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). But the most critical factor in the analysis is the "degree of success obtained." *Id.*; *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Hensley*, 461 U.S. at 436. The Supreme Court of the United States has held that this factor is most important when a party prevails on some but not all of their plead causes of action. *Hensley*, 461 U.S. at 436.

*2. Application*

The parties agree that the lodestar method is the proper method for calculating attorneys' fees. Dixon requests $199, 632.50 in attorneys' fees for payment of her counsel, Mr. Todd Slobin ("Slobin") and Mr. Martin Shellist ("Shellist"). Dixon bears the burden of demonstrating that the hours expended and rates charged by her counsel are reasonable. *Hensley*, 461 U.S. at 427.

*a. Reasonable Hourly Rate*

As evidence of the qualifications of her counsel and the reasonableness of their

---

acceptance of the case; (5) The customary fee charged for those services in the relevant community; (6) Whether the fee is fixed or contingent; (7) The time limitations imposed by the client or circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of attorneys; (10) The undesirability of the case; (11) The nature and length of the professional relationship with the client; and (12)Awards in similar cases.

rates, Dixon has submitted a declaration of Slobin, lead counsel for this case.[11] In his declaration, Slobin states that he has been licensed in Texas for more than fourteen years and has been practicing labor and employment law for the past thirteen years. He is Board Certified in labor and employment law and has handled over 400 employment law cases. Slobin has been working at Shellist, Lazarz, Slobin, LLP for nine years and was named partner in 2010. As such, Slobin is requesting an hourly rate of $400 per hour. According to Slobin's declaration, Shellist has been licensed in Texas for more than eighteen years and is a founding partner of Shellist, Lazarz, Slobin, LLP. In addition, Shellist is a member of the National Employment Lawyers Association and has argued before the Fifth Circuit on seven occasions. Shellist is requesting an hourly rate of $450 per hour.

In his declaration, Slobin states that lawyers "in the Greater Houston area who specialize in labor and employment law, and who have similar litigation experience, generally charge in the range of $350 to $500 an hour."[12] TSU has not objected to the hourly rate. Moreover, another federal district court case in Houston has recently approved similar rates in the labor and employment context. *See Humphrey v. United*

---

[11] *Plaintiff's Supplemental Motion for Attorneys' Fees and Related Nontaxable Expenses*, Document No. 91, Exhibit 1.

[12] *Plaintiff's Supplemental Motion for Attorneys' Fees and Related Nontaxable Costs*, Document No. 91, Exhibit 1 at 7, ¶ 24.

*Way of Tex. Gulf Coast*, No. H-05-758, 2011 WL 3270567, at *9–10 (S.D. Tex. July 28, 2011) (Harmon, J.). Based on the qualifications of Slobin and Shellist and the rates charged in the local community, this Court finds Dixon has submitted sufficient evidence that the rates charged were reasonable. Accordingly, this Court will adopt Dixon's proposed hourly rates: $400 per hour for Slobin and $450 per hour for Shellist.

*b. Hours Reasonably Expended on the Litigation*

Dixon's attorneys have submitted billing records, totaling 486.3 hours of billable work.[13] TSU objects to the requested attorneys' fees for several reasons, one being that there is insufficient support that services were rendered between July 22, 2011 and August 15, 2011. Dixon's attorneys have since filed billing records for the missing time period, making TSU's objection moot. Thus, the Court will proceed to determine the reasonableness of the total number of hours submitted.

In the declaration submitted by Dixon's attorneys, Slobin states that the requested fees do not include charges "for time of other attorneys in [his] office that

---

[13] The Court calculates the total number of hours based on the summation of the detailed billing records. The first set of billing records submitted showed a total of 316.30 hours. *Plaintiff's Motion for Attorneys' Fees and Related Nontaxable Expenses*, Document No. 89, Exhibit 1 at 33. The second set of billing records submitted showed an additional 170 hours. *Plaintiff's Second Supplemental Motion for Attorneys' Fees and Related Nontaxable Expenses*, Document No. 99, Exhibit 1 at 2.

may have reviewed any pleadings or motions or discussed this case."[14] However, the billing records submitted to the Court include work of two attorneys other than Slobin or Shellist. Based on Slobin's declaration, this Court construes Dixon's request to be only for the hours billed by Slobin or Shellist. Of the total hours submitted by Plaintiff, 1.75 were billed by someone other than Slobin or Shellist and will be subtracted.[15] Of the remaining 484.55 hours, the Court calculates that 384.55 of these result from work done by Slobin and the remaining 100 hours are attributable to work done by Shellist. These hours reflect work done on the case from the initial filing of the EEOC claim through the five-day jury trial—a span of more than twenty-nine months. After a detailed review of the submissions, the Court finds the tasks billed for by Slobin and Shellist are well-documented, sufficiently detailed, and reasonably appropriate for the underlying case. TSU, however, objects to the hours billed, arguing that Dixon is not entitled to fees associated with her unsuccessful Title IX gender discrimination claim. In other words, TSU is requesting segregation. Dixon, on the other hand, contends that segregation is unnecessary.

---

[14] *Id.* at 7, ¶ 23.

[15] Dixon submitted a cumulative time report, which included time by all attorneys and staff. No individual attorney logs were submitted. The Court found three entries that were not allocated to Slobin or Shellist: one-half of an hour logged by Mark Lazarz on November 13, 2009; one-quarter of an hour logged by Daryl Sinkule on May 20, 2011; and one hour logged by Mark Lazarz on June 2, 2011.

c. *Segregation of Fees for the Title IX Gender Discrimination Claim*

In general, when a party has prevailed on only a portion of her claims, the party may not recover attorneys' fees associated with the unsuccessful claims. *Hensley*, 461 U.S. at 436. However, the Supreme Court of the United States has explained:

> [In some cases] the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . .

*Id.* at 435. As anticipated by the Supreme Court in *Hensley*, the claims presented in this case arose from the same nucleus of facts and similar legal theories. All of Dixon's claims were based on her employment at TSU and the facts leading up to her termination. In addition, the legal theories were similar. Specifically, the Title IX gender discrimination claim overlapped with the Title VII gender discrimination claim, as well as the Title IX retaliation claim. Nonetheless, some time must have been spent researching the specific elements of a Title IX gender discrimination case and responding to TSU's motion to dismiss and the relevant portions of the motion for summary judgment. *See Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 799

(S.D. Tex. 2009) (Rosenthal, J.) (reducing an award of attorneys' fees for unsuccessful claims, despite "a significant overlap" between the successful and unsuccessful claims).

TSU specifically filed a motion to dismiss the Title IX gender discrimination claim and also included arguments supporting dismissal of that cause of action in its motion for summary judgment.[16] In order to respond, Dixon's attorneys must have spent some time working specifically on the Title IX gender discrimination claim. Based on the billing records submitted, the Court calculates that Slobin spent approximately 14 hours researching and responding to TSU's motion to dismiss and 53.75 hours researching and responding to TSU's motion for summary judgment. The Court recognizes that the majority of the work put into these responses would have been necessary even if counsel had only responded in regards to the claims that were eventually successful. Therefore, after a detailed review of the time logged by counsel on these items, the Court has determined that a reduction of fifteen hours of Slobin's time is appropriate and TSU's objection is sustained to that extent.[17]

---

[16] *See Defendant Texas Southern University's Rule 12B Motion to Dismiss Plaintiff's Title IX Gender Discrimination Claim*, Document No. 19; *Defendant Texas Southern University's Motion for Summary Judgment and Brief in Support*, Document No. 26 at 8–11.

[17]

*d. The Lodestar Amount*

Having determined the reasonable hourly rates and the reasonable amount of hours spent on litigation, the Court determines the lodestar amount as follow:

| Attorney | Rate | Hours | Lodestar Total |
|---|---|---|---|
| Slobin | $400 | 369.55[18] | $147,820.00 |
| Shellist | $450 | 100 | $45,000.00 |
| | | **Total**: | **$192,820.00** |

*e. Adjustment to the Lodestar Amount*

The Supreme Court of the United States has recently affirmed the lodestar calculation. *Perdue v. Kenny A. Ex rel. Winn*, 130 S. Ct. 1662, 1671–73 (2010). The Court explained, "there is a 'strong presumption' that the lodestar figure is reasonable," and the presumption may only "be overcome in . . . rare circumstances." *Id* at 1673. Here, neither party contends that rare circumstances exist in this case that merit alteration of the lodestar calculation, nor does this Court know of any. Accordingly, Dixon is entitled to attorneys' fees equal to the lodestar amount—$192,820.00.

[18] This number reflects the 384.55 hours of work done by Slobin, minus the deduction of 15 hours for the Title IX gender discrimination claim.

*B. Related Nontaxable Expenses and Costs*

Dixon's motion is entitled *Plaintiff's Second Supplemental Motion for Attorneys' Fees and Related Nontaxable Expenses*. However, Dixon, nor her counsel, have submitted any record of related nontaxable expenses, nor have they identified an amount related to nontaxable expenses. Therefore, to the extent that there is a request for nontaxable expenses, the request is denied.

Dixon's motion also includes a request for costs in the amount of $53,559.93. As previously mentioned, this is the exact amount Dixon requested in her Bill of Costs, which the Clerk taxed against TSU on September 26, 2011, and thus, Court understands this to be a duplicative request. Any request for costs beyond or in addition to those taxed against TSU by the Clerk are denied.

Finally, TSU has objected to the payment of fees and expenses of Dixon's expert Dr. Lopiano. TSU contends that Dr. Lopiano testified only as to the unsuccessful Title IX gender discrimination claim and therefore her fees and expenses should not be awarded. The Court construes TSU's objection to be twofold: First, TSU objects to the expert fees or expenses paid, which were included in Dixon's Bill of Costs. And second, TSU objects to the attorneys' fees resulting from time spent preparing Dr. Lopiano. Dixon, on the other hand, argues that Dr. Lopiano testified as to both the successful and unsuccessful gender discrimination claims and thus, any expenses or fees associated with her testimony should be awarded.

First, TSU has failed to provide evidence supporting its contention that Dr. Lopiano worked only on the Title IX gender discrimination claim. Second, the statutory language regarding experts' fees and attorneys' fees in Title VII and Title IX cases allows for awards to the "prevailing party." 42 U.S.C. § 2000e-5(k); 42 U.S.C. § 1988 (c). Dixon was the prevailing party on the three claims submitted to the jury. The Court in *Hensley* emphasized that the critical factor in awarding fees or expenses to a party who has prevailed on most, but not all of her claims, is the degree of success obtained. *Hensley*, 461 U.S. at 436. Taking into account Dixon's success at trial and this Court's previous deduction of attorneys' fees based on the unsuccessful claim, it is determined that all expert fees, expenses, and attorneys' fees related to Dr. Lopiano are properly awarded to Dixon. TSU's third and final objection is overruled and the Clerk's taxation of Dixon's Supplemental Bill of Costs is approved.

## III. CONCLUSION

Accordingly, the Court hereby

ORDERS that Plaintiffs' Second Supplemental Motion for Attorneys' Fees and Related Nontaxable Expenses (Document No. 99) is GRANTED IN PART and DENIED IN PART. The Court further

ORDERS that the amount of costs that is set forth pursuant to the Clerk's taxation of Dixon's Supplemental Bill of Costs in the amount of $53,559.93 is APPROVED. The Court further

ORDERS that Dixon be awarded attorneys' fees in the amount of $192,820.00. The Court further

ORDERS that any additional request for nontaxable expenses or costs beyond or in addition to those submitted in Dixon's Supplemental Bill of Costs is DENIED.

SIGNED at Houston, Texas, on this 2 day of December, 2011.

DAVID HITTNER
United States District Judge